[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Joan Welsh, were married at Redding, Connecticut on September 14, 1991. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of the marriage, Brandon Batesole, born July 26, 1993. No other minor children have been born to the defendant wife since the date of marriage of the parties. The State of Connecticut has not contributed to the support or maintenance of either party.
The court finds that each party is partially at fault for the breakdown of the marriage.
The plaintiff was thirty-four years old when the parties married. This was his first marriage. The plaintiff graduated high school in 1975. He then attended college for approximately a year and one-half in Massachusetts. He has also furthered his college education in New York City at the Institute of Audio Research and in Connecticut at the Institute of Research Audio Technology. His courses in New York consisted of audio engineering courses. He did not graduate from the New York school. He attended the New York school part time over a period of approximately nine months. His college in Connecticut was during the period of 1986 and 1987, going part time for approximately nine months. During the same time that he was attending college in Connecticut, he worked for a record company doing marketing, sales, shipping and telephone. He received a certificate of completion from the Connecticut school. He has also taken courses in the field of performing arts, acting and computer related courses. After attending college in Massachusetts, he worked for approximately six months at a motor inn. He then worked for the Stamford Advocate in the mailroom. In the early 1980s, he worked at a liquor store. He also worked at a factory in Boston, bottling vitamins. In early 1981, he returned to Connecticut and worked for a computer company in Norwalk, dismantling the mainframe computers. He also did some managerial office work, running the office of his employer for approximately six months. His next job was at a veterinary hospital where he worked in a kennel an excess of six months. This was in 1984. In CT Page 6530 1985, he worked for a music company. That work included client contact and shipping. He worked there for approximately a year and one-half, after which he opened his own music company under the name of Star Castle Recording. When he was employed by Celestial Harmonics, his income was in the mid $20,000 range. When he was employed by DeMarco, his salary was in the range of $20,000 to $30,000. For the purpose of entering financial orders, the court finds that he has an earning capacity of $26,000 and is using that earning capacity in part in setting financial orders. The court is using the plaintiff's earning capacity due to the fact that the plaintiff voluntarily reduced his earnings by continuing to operate Star Castle Recording when it was not profitable. Star Castle Recording was a recording studio that was opened in October of 1988, approximately three years before the parties married. The studio was not profitable. He has been seeking employment since he closed the studio, both in Connecticut and New York City. He has sent resumes to various recording studios, as well as sending resumes regarding computer work. He is presently unemployed. The plaintiff operated Star Castle Recording Studio from 1988 until 1995. It was a full service audio studio. The plaintiff did not have any other employees working at the studio. He would average thirty-five to forty hours weekly working at the studio. While at the studio, he did some songwriting, recording and marketing business. The studio closed on December 1, 1995. The source of the funds to run the studio was his inheritance money.
The plaintiff inherited approximately $1,000,000 from his grandmother after her death in October, 1986. Most of the inheritance was in the form of securities. At approximately the same time that his grandmother died, he also received an inheritance of a little under $100,000 from his uncle, Robert Altman.
The plaintiff's financial affidavit dated November 19, 1996, shows real estate located at 47 Putnam Park Road, Redding, Connecticut and 5 Goodsell Hill Road, Redding, Connecticut. The court finds that the fair market value of the 47 Putnam Park Road property is $275,000 and that it has no mortgage. The court finds that the fair market value of the 5 Goodsell Hill Road property is $530,000 and that it has a mortgage with a balance of $80,292 with an equity of $449,708. The plaintiff purchased the property located at 47 Putnam Park Road, Redding, Connecticut in May of 1987, at a cost of $350,000. He used funds that he had previously inherited from his grandmother for that purchase. The property CT Page 6531 located at 5 Goodsell Hill Road, Redding, Connecticut was purchased in October of 1992, at a total cost of $505,000. The property had previously been foreclosed and was purchased by the plaintiff and defendant from the mortgagee. It had not been completed when it was purchased and needed additional work that cost approximately $30,000 to $40,000 to complete. The source of the money to complete the purchase was securities from the plaintiff's inheritance plus a first mortgage in the face amount of $85,000. On November 21, 1992, the plaintiff borrowed $50,000 from his father. He has been making monthly interest payments on that loan. The title to the property at 5 Goodsell Hill Road, Redding, Connecticut is in the name of both the plaintiff and the defendant. The title to the property at 47 Putnam Park Road, Redding, Connecticut is in the plaintiff's name only. The plaintiff owns a 1991 Nissan that was purchased approximately one year ago at a cost of approximately $16,500. He also owns a 1964 Aston Martin motor vehicle with a fair market value of $60,000. That vehicle was purchased in 1986, with his uncle for $17,000. His uncle paid the full $17,000 and gave him a one-half interest. He inherited it from his uncle when his uncle died in February, 1987, and left it to him as an inheritance. He has approximately $500 in his Fleet checking account. He has a Merrill Lynch account with a balance of $169,000 in securities. These are the remaining securities that he inherited from his grandmother. He also has $16,000 in a Kemper account. He also has $4000 in securities, known as Lord Abbett, AMCAP and Tex Utilities. The plaintiff's financial affidavit dated November 19, 1996, shows a weekly payment for a rental mortgage of $356. That is the mortgage on the family home. He also shows real estate taxes of $96 weekly. Those are the real estate taxes for both the family home and the property at 47 Putnam Park Road. The fuel expense of $39 weekly is for the Putnam Park Road property only. The electric expense of $92 is for both properties. The gas expense of $82 is for the family home. The telephone expense of $7 is for the Putnam Park Road property only. The trash collection of $16 is for both properties, as is the cable bill of $31. The food expense of $92 weekly is for the plaintiff only, as is the clothing expense of $17 weekly. He has a weekly transportation gas expense of $29 and repairs of $24 for his 1991 Nissan. The auto expense of $52 weekly is for his Nissan, as well as for two vehicles that are at the family home. The homeowner's insurance expense of $37 weekly is for both properties. He shows a life insurance expense of $13 weekly that the court is excluding as he presently does not have life insurance. The medical/dental expense of $42 weekly is for both the plaintiff and the minor CT Page 6532 child. His financial affidavit also has an additional list of weekly expenses shown on Schedule A, as well as liabilities shown on Schedule B that is attached to his affidavit. He pays the nanny for the minor child $253 weekly. The minor child has had a nanny for almost two years. He shows a day care expense of $12 that the court is eliminating. There is a preschool expense for the minor child of $23 that he pays that represents one-half of the preschool costs with the defendant paying the other half. His acting workshop expense of $35 weekly is for a workshop that he has attended in New York since September of 1995. He has a money manager expense of $75 weekly to Edmund Peaslee, Jr. He has had a financial advisor since he acquired his inheritance in 1988, from his grandmother. The total weekly expenses that he has are $1701. He has a list of liabilities shown on Schedule B. In addition to the $50,000 loan from his father, he has an additional $7000 loan from his father that he took out on June 26, 1996. That money was used towards attorney's fees. He has paid to date attorney's fees on behalf of the defendant of $11,800. He presently has dividend and interest income of $181 weekly. He does not have any other income. The summary on page two of his financial affidavit shows his total weekly income is $360. That is an error and the correct amount is $181. The 1991 Nissan that he owns was purchased in November, 1995, as a used vehicle at a cost of approximately $16,000 or $17,000. He used funds from his Merrill Lynch account for that purchase. He had been operating a 1987 Citroen which he gave to the defendant to operate. The plaintiff, in his financial affidavit, has a general category of "furniture, etcetera and sound equipment" with an undetermined value. The following is a list of property that the plaintiff owns at the Putnam Park Road residence, including the date of purchase, cost and fair market value.
___________________________________________________________________________ | Date of | Items Owned by Rob | Cost | Fair Market Value | | Purchase | at Putnam Park | | | |________________|_______________________|_____________|___________________| | 1993 | 486 Computer (IBM | $2,000 | $800 — $1000 | | | clone bought in 1993) | | | |________________|_______________________|_____________|___________________| | | Hewlett Packard | | Unknown | | | Deskjet 520 Printer | | | | | (gift from defendant) | | | |________________|_______________________|_____________|___________________| | | 5' x 7' Oriental rug | | $300 | | | bought at Home | | | CT Page 6533 | | Depot | | | |________________|_______________________|_____________|___________________| | | This End Up wooden | $500 — $600 | $500 — $600 | | | bed bought for | | | | | Brandon's room | | | |________________|_______________________|_____________|___________________| | | Panasonic 13" TV | $400 | about $400 | | | w/VHS unit | | | |________________|_______________________|_____________|___________________| | | GE refrigerator | $700 | $550 | |________________|_______________________|_____________|___________________| | | Kenmore vacuum | $300 | almost $300 | | | cleaner | | | |________________|_______________________|_____________|___________________| | | Audio Equipment | | | | | from Star Castle | | | | | Recording | | | |________________|_______________________|_____________|___________________| | | Tascam 48-8 (1/2" 8 | | $500 | | | track open reel deck) | | | |________________|_______________________|_____________|___________________| | | Miscellaneous | | $2500 — $3000 | | | microphones | | | |________________|_______________________|_____________|___________________| | 1990 | Korg T3 synth | $2500 | $500 | |________________|_______________________|_____________|___________________| | 1989 | Pearl drum kit | $2000 | $1000 | |________________|_______________________|_____________|___________________| | 1989 | Rickenbacker JL model | $600 | $800 | | | 3/4 scale guitar | | | |________________|_______________________|_____________|___________________| | 1989 | Hafler 235 amplifier | $400 | $300 | |________________|_______________________|_____________|___________________| | | Hafler 505 amplifier | $500 | $375 | |________________|_______________________|_____________|___________________| | | Lexicon PCM70 f/x | $1500 | $1200 — $1300 | | | unit | | | |________________|_______________________|_____________|___________________| | | Sony 75 ES Dat | $800 — $900 | $400 | | | machine (Gift from | | | | | defendant) | | | |________________|_______________________|_____________|___________________|
As of August 31, 1995, his net portfolio value was $270,034. He wrote checks for the period of August 1, 1995 to August 31, CT Page 6534 1995, of $15,273.82 and had written checks for the year to date as of August 31, 1995, of $39,849.78. For the period ending September 29, 1995, his net portfolio value was $267,787. He had written checks for the prior month of $9075, with total checks written year to date as of September 29, 1995, of $48,924.78. For the period ending October 31, 1995, his net portfolio value was $252,372. He had written checks for the prior thirty day period of $13,045 and his checks written year to date as of October 31, 1995, were $61,969.78. For the period ending November 30, 1995, his net portfolio value was $234,226. He had written checks for the prior thirty day period totalling $5500 and the checks written year to date as of November 30, 1995, were $67,469.78. For the period of August 31, 1996 to September 30, 1996, his net portfolio value was $192,938. He had written checks for that thirty day period of $7000 with checks written for the year to date as of September 30, 1996, totalling $61,179.86. The plaintiff's financial affidavit includes, as liabilities, attorney's fees of $5000. As of November 20, 1996, he had already paid approximately $25,000 towards his attorney's fees.
On November 10, 1995, the parties entered into a stipulation for pendente lite orders. That stipulation included custody and visitation, as well as alimony and support, as well as dental and medical insurance together with covering other items. Under the stipulation, the plaintiff agreed to pay, as support for the defendant and the minor child, the monthly payments to Citicorp in the amount of $1386.66 for the mortgage on the property at 5 Goodsell Road, Redding, Connecticut, as well as all periodic bills for homeowner's insurance in the annual amount of $1058, as well as customary monthly gas, electricity and trash collection charges for the family home, as well as routine lawn and snow removal services for the family home, together with $900 as a contribution to the expense of a nanny for the minor child. The stipulation entered into between the parties coded No. 108 dated June 1, 1995, provided in part that neither party would sell, transfer, donate or loan any personal property owned by either of them or by the other party without the express written consent of the other. In July or August of 1996, the plaintiff sold two rings that he had inherited from his grandmother for $5000. He did not have the consent of the defendant to sell those items. He has also sold recording equipment in 1996, for which he received approximately $5000.
On November 13, 1995, the court approved of a stipulation entered into between the parties coded No. 119 and dated November CT Page 6535 10, 1995. That stipulation provided in part that the plaintiff may sell any of the equipment at his sound studio that he does not expect to need on an arm's length basis with the defendant having the right to claim that there should be allocated to her, as part of the division of assets in this case, some of such equipment that is not sold by the plaintiff, and some part of the proceeds of the sale without prejudice to the plaintiff's right to object to and oppose any such allocation.
The following chart shows the income of the parties between the years 1991 and 1995, as shown on their tax returns. The 1995 tax return is an individual return of the plaintiff only.
_______________________________________________________________________ | YEAR AND | PLAINTIFF | PLAINTIFF | DEFENDANT'S | PLAINTIFF'S | | TYPE | GROSS LOSS | GROSS LOSS | GROSS | DIVIDEND | | RETURN | FROM | DUE TO | INCOME | INCOME | | | BUSINESS | DEPRECIATION | | | | | | AND | | | | | | SECTION 179 | | | |_____________|____________|_____________ |_______________|_____________| | 1991 | $33,659 | $15,598 | $46,800 | $36,800 | | Joint | | | A/R* | | |_____________|____________|______________|_______________|_____________| | 1992 | $28,261 | $14,919 | $48,894 | $25,685 | | Joint | | | A/R* | | |_____________|____________|______________|_______________|_____________| | 1993 | $28,374 | $9,820 | $41,040 | $17,627 | | Joint | | | A/R* | | |_____________|____________|______________|_______________|_____________| | 1994 | $19,388 | $8,578 | $17,016 | $16,571 | | Joint | | | Foster, | | | | | | Morgan | | | | | | Clarke | | | | | | Intl. | | | | | | | | | | | | $19,458 | | | | | | Automotive | | | | | | Restorations, | | | | | | Inc. | | |___________ _|___________ |______________|_______________|_____________| | 1995 | $28,153 | $20,835 | *A/R is | $12,800 | | Plaintiff's | | | Automotive | | | Individual | | | Restorations, | | | | | | Inc. | | CT Page 6536 | | | | | | | | | | | | | | | | | | |_____________|____________|______________|_______________|_____________| ___________________________ | YEAR AND | PLAINTIFF'S | | TYPE | GROSS | | RETURN | BUSINESS | | | INCOME | |_____________|_____________| | 1991 | $4,520 | | Joint | | |_____________|_____________| | 1992 | $12,740 | | Joint | | |_____________|_____________| | 1993 | $9,367 | | Joint | | |_____________|_____________| | 1994 | $11,200 | | Joint | | |_____________|_____________| | 1995 | $11,949 | | Plaintiff's | | | Individual | | |_____________|_____________|
The defendant is presently employed by IBM as an accountant/bookkeeper. She works on a per diem basis earning approximately $100 per day. Prior to taking the employment with IBM, she was employed by Foster, Morgan and Clarke International in Stamford, Connecticut for a period of approximately two years as a comptroller at an annual salary of $36,000. She was terminated at that employment due to a dispute. She was employed by Automotive Restorations, Inc. at the time she married the plaintiff. The defendant's financial affidavit dated November 19, 1996, shows a payment for rent of $75 weekly. That is rent that she is paying to her brother for a garage in Ansonia, Connecticut. She has a 1981 De Lorean that she owns in that garage that was purchased in the early 1990s. She did not own it on July 11, 1991, at the time of her divorce from her first husband. The purchase price for the vehicle was $18,000. Its present fair market value is between $9000 and $10,000. It was not listed on her financial affidavit originally submitted to the court. The defendant's present gross weekly income is CT Page 6537 approximately $500 and her net weekly income is $381. Her affidavit shows restaurant expense of $75 weekly. That includes payments that she makes when she takes other persons out to dinner. Her financial affidavit shows under the category of vacation/child activities $144 weekly. For the child's last birthday she spent approximately $2000 for food. She has an expense for $25 weekly for an automobile loan. That is an expense for a 1996 Terrapin motor vehicle which was not shown on her financial affidavit as submitted. She only has the shell for the vehicle and does not have an engine for it. It was purchased in 1992, at a cost of $9000. She was unable to pay a $12,000 bill to rebuild the engine and the party who rebuilt it, kept the engine in repayment of that bill. Her financial affidavit shows an expense for life insurance premium of $16. She is presently not paying that amount. It also shows an expense for medical/dental of $138 weekly. The correct amount of that is approximately $50 weekly. The defendant also owns a 1966 MGB motor vehicle that was purchased during the marriage and was not initially shown on her financial affidavit. The fair market value of that vehicle is $450. She also owns a 1961 Plymouth Valiant that was not initially shown on her financial affidavit. The defendant also has a bank account with approximately $100 in it that is in her name and her dog's name. She also has a bank account with approximately $400 in it that is in her name and the minor child's name. Neither of these two bank accounts were initially shown on her financial affidavit. She has an account at Fleet Bank with approximately $900 in it. She also has an account at Lafayette Bank that was not initially shown on her financial affidavit with a balance of $700. She has jewelry with an approximate fair market value of $3500 that was not shown on her financial affidavit. Her financial affidavit lists a number of liabilities totally $29,355. In addition to those liabilities, she has three additional liabilities that were not shown on her financial affidavit for credit cards, two of which have a balance of approximately $3000 each, and a third having a balance of from $1000 to $3000. The $3000 balances are with the Core State and People's Bank. The Bank One credit card has a balance of approximately $1000 to $3000.
The defendant was twenty-five years old when the parties married. She had previously been married. Her first marriage was dissolved on July 11, 1991, approximately two months before she married the plaintiff. On July 11, 1991, she had assets totalling $27,650 and liabilities totalling $5000. She retained all of her assets when her first marriage was dissolved. The defendant CT Page 6538 received her high school diploma in late 1982. She also has a college degree from Clark College in Great Barrington, Massachusetts. She also has a degree from Western Connecticut State University that she received in 1984 in the field of social science.
The reasonable fee for the services of counsel for the minor child is a total of $8,958.48. The balance that is due is $6,535.49.
The parties entered into an agreement regarding the issue of joint custody and visitation which the court has approved of and will enter orders in accordance with such agreement. The reference in the agreement to the wife providing the husband ninety (90) days notice of her intention to relocate more than twenty-five (25) miles from the husband's residence refers to the husband's present residence at 47 Putnam Park Road, Redding, Connecticut. The parties are in agreement that during the time the plaintiff is exercising visitation with the minor child that he should not consume alcohol for eight hours prior to the time that the visitation commences or during the visitation. In calculating the child support guidelines, the court is using the net weekly income of the plaintiff based on a gross income of the plaintiff for his earning capacity of $26,000 per year, as well as the defendant's net weekly income based on her present gross income of $500 per week. The child support guideline would call for a weekly support payment by the plaintiff to the defendant of $96 per week. The court finds that the presumption that the guidelines amount is correct has been rebutted in this case, and that the guidelines would be inequitable and inappropriate based on the division of assets and liabilities in this case.
The parties are in dispute regarding the following items:
 ITEMS BOUGHT PRIOR TO 1991 MARRIAGE BETWEEN THE PARTIES (UNLESS NOTED):
 1. Wurlitzer juke box (This was acquired in 1988. It was in working condition when the plaintiff vacated the family home. The defendant and the minor child use this item. There are some bulbs missing from the juke box.)
 2. Monk's table (This was a gift from the plaintiff's parents in 1988 or 1989; it was at the family home when he vacated the home on January 6, 1995.) CT Page 6539
 3. 6' x 15' Oriental rug (This was acquired in 1988 or 1989. It was purchased in Stamford, Connecticut from a rug outlet. It was in good condition. It was at the family home when the plaintiff vacated the family home. The defendant uses this item.)
 4. "Sunburst" wardrobe (This was acquired in 1989, from a Norwalk antique store. It was in good condition. It was at the family home when the plaintiff vacated. The defendant uses this item.)
 5. Soapstone coffee table (This was a gift from the defendant to the plaintiff on the plaintiff's birthday in about 1993. It was acquired after the parties were married.)
 6. RCA color TV (This was purchased in 1993, after the parties married. It was in the family home and in good condition when the plaintiff vacated. The minor child and the defendant use this item.)
 7. French canal picture (photograph) by Willard Richardson (This was purchased from the plaintiff's aunt and his late uncle by the name of Richardson. It was in the family home when he vacated.)
 8. Impressionist painting by Houghton Cranford Smith (This is a painting that was done in approximately 1918, and was purchased by the plaintiff in approximately 1989. It was in good condition and at the family home when he vacated in January of 1995. The frame on this painting is damaged.)
 9. (2) 18th century "slipper" sofas (These are two loveseats that the plaintiff purchased in 1988. They were in fair condition when he vacated the family home.)
 10. Citroen car model collection (Some of this collection was collected in 1988, prior to the time the parties married. The collection has continued until 1994. Some of the items were in good shape and some were worn when he vacated the family residence. The minor child uses this item. Some of the model cars were damaged by the child. The defendant is not certain if the full collection still exists.) CT Page 6540
 11. Nordic track (This was purchased in 1987, and was in good shape when the plaintiff vacated the family home. The defendant uses this item.)
 12. "Dog's of the Union" print (This is an English print that was purchased in 1988 or 1989. It was in good shape when the plaintiff vacated the family residence. The defendant does not know where this item is.)
 13. Books (These are a number of classic books that he owned prior to the marriage. The defendant uses this item. There are approximately 1000 books that are in dispute.)
 14. Lloyd Bremmen Line print by James Flora (This was a gift from his aunt and is a print of a ship that was acquired in the late 1980s. It was in good condition when the plaintiff vacated the family residence.)
 15. Van Gough reproduction in gold frame (This is an 8" x 10" reproduction that was a gift from the defendant. It was in good condition when the plaintiff vacated the family residence.)
 16. Miscellaneous tools and equipment (These are numerous woodworking and yard tools, a power circular saw, some soldering irons, some weed trimmers and other items that were in the basement when the plaintiff vacated.)
 17. Schwinn mountain bike (This bicycle was acquired in 1987 or 1988, by the plaintiff. The defendant does not know where the bicycle is.)
 18. Framed Titanic post card picture (This is a postcard of the Titanic that was purchased in Newport, Rhode Island in 1988 or 1989. It was in good condition when the plaintiff vacated. The defendant does not know where this item is.)
 19. Record collection (This was acquired during the period of 1970 and 1980. The defendant is not certain if the full collection exists.)
 20. Bentley Print (This was acquired in 1991 or 1992. It was a gift from his aunt, Nina Richardson. It was in good CT Page 6541 condition when the plaintiff vacated the family residence. The defendant uses this item.)
 ITEMS INHERITED FROM ELIZABETH LAMONT (PLAINTIFF'S GRANDMOTHER) IN 1987:
1. Late 18th Century grandfather clock
2. (2) Victorian side chairs
3. Tea table
 4. (2) pedestal iron dining table with glass top (The minor child and the defendant use this item.)
 5. (8) iron chairs (The minor child and the defendant use this item.)
6. (2) Spanish plates with iron wall brackets
7. Portrait of Rob's great, great grandmother by Sulley
8. English side chair with green upholstery
 9. Brass fireplace screen (The defendant does not know where this item is.)
 10. Brass fireplace fan (The defendant does not know where this item is.)
11. Brass coal scuttle (The minor child uses this item.)
 12. (3) brass pots (The defendant does not know where this item is.)
 13. Ceramic urn (The defendant does not know where this item is.)
 14. Steinway baby grand piano (The minor child and the defendant use this item.)
 15. Benjamin Franklin at the French Court print (The defendant does not know where this item is.)
16. English jewel case table (The defendant does not know CT Page 6542 where this item is.)
 17. 6' Sheraton cane seat bench (The minor child and the defendant use this item.)
 18. Confederate Army print (The defendant does not know where this item is.)
 19. Ceramic oval portrait of Rob's great grandmother (The defendant believes this item is in the basement, but is not certain.)
 20. (2) red glass fruit bowls (The defendant does not know where this item is.)
 21. Glass nut bowl (The defendant does not know where this item is.)
 22. Still life painting by Laura Mills (The defendant does not know where this item is.)
23. American slant front desk
24. Italian tea chest
25. English sideboard
 26. Coin collection in large brown suitcase (The defendant has not seen this item.)
27. (3) silver plated pheasants
 28. Winslow Homer print (The defendant does not know where this item is.)
29. Books (classics) (The defendant uses this item.)
 30. (4) fox hunt prints (set) (The defendant does not know where this item is.)
 31. Trout fishing print (The defendant does not know where this item is.)
 32. 19th Century carriage print (The defendant does not know where this item is.) CT Page 6543
 33. (2) brass candlesticks (The defendant does not know where this item is.)
34. (2) silver candlesticks
 35. Silver and glass perfume bottle (The court finds that this item has already been turned over to the plaintiff.)
36. Silver vase
 37. Side and corner cane chairs (Some of the chairs are at the family home.)
 38. "St. Patrick" print (The defendant does not know where this item is.)
 39. Mason china (The defendant does not know where this item is.)
 40. Old Willow china collection (The minor child and the defendant use this item. Some of the dishes are broken.)
 41. Wedgewood white on white china (Some of this china is at the family home.)
42. Gilt trimmed 18th Century double paneled mirror
43. Early 20th Century cupboard
 44. 18th Century painted fireplace screen (The defendant does not know where this item is.)
 Four (4) trunks in basement containing miscellaneous family items from Elizabeth Lamont estate.
The parties are in dispute as to the value of the items acquired prior to the marriage and those inherited by the plaintiff from his grandmother that are at the family home. The court finds from the evidence presented that the total value of those items is $20,000. None of the disputed personal property includes the minor child's furniture, or the furniture for the nanny, or the furniture in the guest bedroom, or master bedroom, as well as furniture in the media room and den room. The parties are in agreement that the defendant can retain all of the CT Page 6544 nondisputed furniture. The books that the plaintiff seeks to retain include a collection by Dickens, a collection by Thackery, an American encyclopedia, books about Winston Churchill, a collection of Wadsworth books, a collection of Longfellow books, a collection of Titanic books and some automotive books. The total number of books that the plaintiff is seeking to retain is approximately 150.
The court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of Z46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a regarding the issue of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of §46b-62 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF CUSTODY AND VISITATION
1. The parties shall have joint legal custody of the minor child, Brandon, aged three, and the wife shall have physical custody of him, until further order of this court. The husband shall have the right of reasonable visitation, which shall include visitation as follows:
a. Wednesdays, from 3:15 p. m. to 6:30 p. m.
 b. Fridays, from 3:15 p. m. to 6 p. m., except for every other weekend when the husband shall have visitation starting at 3:15 p. m. Friday through 6 p. m. on Sunday.
c. Holidays:
 1. Thanksgiving, in alternate years at least one full day.
2. Each year at Christmas, from 10 a.m. on the day after CT Page 6545 Christmas, December 26, until 10 a.m. on the following morning.
 d. Extended visitation. In addition, a total of fourteen days throughout the year of extended visitation of three days to seven days long.
If and when the wife is transferred in her employment to North Carolina or, for any other reason, moves beyond a radius of twenty-five (25) miles from the husband's residence, or, in the event of any other relevant change in circumstances, either party shall be entitled to apply to this court, pursuant to its retained and continuing jurisdiction, to modify the custody and visitation orders. The wife shall provide the husband with ninety (90) days notice of her intention to relocate more than twenty-five (25) miles from the husband's residence. The notice shall be by certified mail, return receipt requested. The requirement of giving notice in the event of relocation more than twenty-five (25) miles from the husband's residence refers to the husband's present residence at 47 Putnam Park Road, Redding, Connecticut. In addition, the plaintiff is not to consume any alcohol for a period commencing eight (8) hours prior to the start of visitation, as well as any time during the visitation.
C. BY WAY OF SUPPORT
1. The court orders that the plaintiff pay to the defendant by way of support the sum of $150 weekly. The guideline amount would be $96 weekly. In addition, the court orders that the parties divide equally all medical expenses for the minor child. At the present time, neither party has medical insurance coverage for the minor child. In the event such coverage becomes available to either party through his or her employment, then such party is to provide insurance coverage for the benefit of the minor child and the parties are to divide equally any uncovered or unreimbursed medical expenses for the minor child.
2. The plaintiff shall have the right to claim the minor child as an exemption for federal and state income tax purposes for each odd numbered calendar year in which he is current in his support payments.
D. BY WAY OF ALIMONY
CT Page 6546 1. No alimony is awarded in favor of either party.
E. BY WAY OF PROPERTY ORDERS
1. The court orders that the plaintiff pay all the liabilities shown on his financial affidavit and hold the defendant harmless therefrom.
2. The court orders that the defendant pay all of the liabilities shown on her financial affidavit plus the three credit card liabilities not shown on her affidavit and hold the plaintiff harmless therefrom. This order is not intended to create any third party beneficiary rights regarding the disputed liability shown on the defendant's financial affidavit.
3. The court awards to the plaintiff all of the items listed as items purchased prior to the marriage, as well as all of the items inherited from his grandmother except for the following items:
a. Wurlitzer juke box
b. RCA color TV
c. Soapstone coffee table
d. Nordic track
 In the event that there is a dispute between the parties regarding which books are to be retained by the plaintiff, then such dispute is referred to Family Services for mediation. In the event the parties cannot resolve the matter in mediation, then the court retains jurisdiction over such dispute.
4. All of the remaining items of household furniture at the family residence is awarded to the defendant.
5. The property at 47 Putnam Park Road, Redding, Connecticut is awarded to the plaintiff.
6. The 1991 Nissan and 1964 Aston Martin motor vehicles are awarded to the plaintiff.
7. The Fleet bank account shown on the plaintiff's financial CT Page 6547 affidavit is awarded to the plaintiff.
8. All of the stocks, bonds and mutual funds shown on the plaintiff's financial affidavit are awarded to the plaintiff.
9. All of the motor vehicles owned by the defendant consisting of the 1987 Oldsmobile, 1987 Citroen, 1981 De Lorean motor vehicle, 1966 MGB and 1991 Valiant, as well as the Terrapin race car chassis, are all awarded to the defendant.
10. All of the defendant's jewelry is awarded to the defendant.
11. The Fleet checking account, Lafayette bank account and the account that the defendant has with her minor child, as well as the account that she has with her dog, are all awarded to the defendant.
12. The defendant is to vacate the marital residence located at 5 Goodsell Hill Road, Redding, Connecticut by May 1, 1997. The plaintiff is to pay to the defendant the sum of $200,000 by May 1, 1997, simultaneously with the defendant vacating the family residence. Simultaneously with vacating the family residence and receiving the $200,000, the defendant is to execute and deliver a quitclaim deed to the plaintiff for the family residence at 5 Goodsell Hill Road, Redding, Connecticut. Up until the time the defendant vacates the family residence, she is to be responsible for the payment of all utilities for the family residence. The plaintiff is to make all reasonable efforts to release the defendant from the mortgage on the family residence or to refinance the family residence within one year from the date this decision is filed. The defendant is to give to the plaintiff at least thirty (30) days advance notice by registered mail, return receipt or certified mail, return receipt of the date she intends to vacate the family residence, which date is to be no later than May 1, 1997.
13. The defendant has prepaid the health insurance from her prior employment through December 31, 1996. She is ordered to have that insurance remain in full force and effect through December 31, 1996, for the benefit of the defendant and the minor child. To the extent that the plaintiff is able to obtain COBRA benefits under the defendant's health insurance through her prior employment, the defendant is ordered to cooperate with the plaintiff obtaining such coverage at the sole expense of the CT Page 6548 plaintiff.
14. All furniture and sound equipment in the possession of the plaintiff is awarded to the plaintiff.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either the plaintiff or the defendant.
2. The plaintiff is ordered to pay the balance due for attorney's fees for counsel for the minor child.
G. MISCELLANEOUS ORDERS
1. The parties are ordered to exchange copies of their federal and state tax returns within thirty (30) days after such returns have been filed by certified mail, return receipt or registered mail, return receipt for so long as there is an outstanding support order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature, who is to send it to counsel for the minor child for signature and filing.
Axelrod, J.